Dave SHELDON, Plaintiff,

v.

Jay VERMONTY, et al., Defendants.

No. 98–2277–JWL.

United States District Court, D. Kansas.

Nov. 30, 1998.

Darren K. Kearns, Overland Park, KS, for Plaintiff.

Jane L. Stafford, Patrick J. Whalen, Spencer, Fane, Britt & Browne, Kansas City, MO, Mario Aieta, Aieta & Greco, New York City, for Defendants.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This matter is before the court on defendants' motion to dismiss plaintiff's complaint (doc. 8). Specifically, defendants move to dismiss plaintiff's complaint for failure to comply with the pleading requirements of rules 8(a) and 9(b) of the Federal Rules of Civil Procedure. Additionally, defendants move to dismiss for improper venue, or in the alternative, for a venue transfer to the Eastern District of New York. For the reasons set forth below, defendants' motion is granted in part, and denied in part.

### I. Factual Background

Plaintiff Dave Sheldon instituted this action to recover damages for capital lost after stock he purchased from defendants apparently declined in value.[1] Plaintiff alleges violations of the federal and state securities laws, common law fraud, negligence, breach of fiduciary duty, and civil conspiracy. The following is a brief summary of the factual allegations contained in plaintiff's complaint.

In "mid-year 1996," plaintiff was informed of the opportunity to invest in Power Phone, Inc., ("Power Phone") a company with its residence and principal place of business in New York. Plaintiff learned of Power Phone's existence while visiting an Internet "chat room." According to plaintiff, Jay Vermonty was identified as an "investor relations" representative for Power Phone, who was "paid free shares of tradable stock to promote, hype and orchestrate the pulling in of unsuspecting investors into this fraudulent business situation." Plaintiff further alleges that defendants Noah Steinberg, Gershon Tannenbaum, Enrique Carrion, and Hector Cruz knowingly assisted Jay Vermonty in disseminating false information relating to the financial fitness of Power Phone, and its

---

1. The court notes that it is unable to conclusively determine the precise nature of the loss experienced by plaintiff, and thus assumes that the loss incurred by plaintiff is due to a decline in the value of Power Phone Inc.'s stock.

promising potential for economic growth. Defendant Carmen Vermonty, also an alleged "investor relations" representative for Power Phone, is alleged to have been unjustly enriched by her husband's scheme to defraud plaintiff due to her receipt of benefits including "improvement to her home, vehicles purchased, and deposits into various bank accounts."

Plaintiff claims that the allegedly false representations made by defendants Jay Vermonty, Carrion, Steinberg, and Tannenbaum touting Power Phone's "sound financials," characterizing certain future contracts as "done" deals, and predicting a favorable outcome of an upcoming reverse merger between Power Phone and T.M.C. Agroworld induced plaintiff to purchase shares of Power Phone stock. Plaintiff claims that as a result of his reliance on defendants' verbal and written assurances, he "ultimately sustained a substantial loss." Plaintiff claims monetary damages in the amount of $75,000.

## II. Legal Standard

Rule 8(a) of the Federal Rules of Civil Procedure sets forth the general pleading requirements: "[a] pleading which sets forth a claim for relief... shall contain... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a).

Rule 9(b) governs special matters' pleading, including federal securities claims. Fed. R.Civ.P. 9(b). Rule 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Id.* Rule 9(b)'s heightened pleading requirements serve to provide defendants adequate notice of the plaintiff's claim, to protect defendants from reputational damage caused by "improvident charges of wrongdoing," and to "inhibit the institution of strike suits." *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 986 (10th Cir. 1992) (quotation omitted). Despite the apparent inconsistency between Rule 9(b)'s "pleading with particularity" standard with respect to fraud or mistake and Rule 8(a)'s simple "notice" pleading directive, Rule 9(b) is to be read "in conjunction with the [notice] pleading requirements of Rule 8." *Seattle–First Nat'l Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir.1986).

The court treats a dismissal for failure to plead fraud with sufficient particularity under Rule 9(b) according to the same standards as a Rule 12(b)(6) dismissal. *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1118 n. 5 (10th Cir.1997) (citing *Seattle–First Nat'l Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir.1986)). Due to the fact-based inquiries often implicated by securities fraud actions, a motion to dismiss is often "difficult to obtain." *Id.* at 1118. "Nonetheless, courts do not hesitate to dismiss securities claims pursuant to 12(b)(6) ... where the plaintiff has failed to allege with particularity circumstances that could justify an inference of fraud under Rule 9(b)." *Id.*

The court will dismiss a cause of action for failure to state a claim only when it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief, *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir.1998), or when an issue of law is dispositive. *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, *Maher*, 144 F.3d at 1304, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Witt v. Roadway Express*, 136 F.3d 1424, 1428 (10th Cir.1998). The issue in resolving a 12(b)(6) motion is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

## III. Defendants' Motion to Dismiss

### A. Counts II, IV and V: Section 10(b) and the Private Securities Litigation Act

To establish liability under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), plaintiff must allege that, in connection with the sale or purchase of securities, the defendant (1) made a false or misleading statement of material fact, or failed to state a material fact, (2) that the defendant acted with scienter, (3) that plaintiff relied on the misrepresentations, and (4) sustained damages as a proximate result of the inaccurate statement. *Farlow*, 956 F.2d at 986. Be-

cause a § 10(b) claim necessarily involves allegations of fraud, a plaintiff is required to comply with Rule 9(b)'s heightened pleading requirements.

Apparently dissatisfied with Rule 9(b)'s failure to prevent abuse of the private securities laws by attorneys allegedly anxious to extort settlements generally "based not on the merits but on the size of the defendant's pocketbook," Congress amended the Securities Exchange Act of 1934 by enacting the Private Securities Litigation Reform Act of 1995 (PSLRA). *See* Sen. Rep. No. 104–98, at 8–14 (1995), *reprinted in* 1998 U.S.C.C.A.N. 679, 687–693. Expressing alarm at the number of "professional plaintiffs" eager to file securities fraud actions immediately following any even slightly adverse corporate disclosure, and the ease with which such lawsuits could be instituted by filing "[often] meritless cookie cutter complaint[s]," Congress sought to eliminate the exaction of the "litigation tax" it felt private securities litigation has come to represent. *Id.*

In an effort to erect a procedural obstacle to hastily-crafted federal securities fraud complaints, the PSLRA imposes stringent pleading requirements with respect to both the alleged misrepresentation and the required state of mind. 15 U.S.C. § 78u–4(b)(1) and (2). Specifically, the Act provides:

> In any private action arising under this chapter...the complaint shall specify [1] each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed... [2] with respect to each act or omission alleged to violate this chapter, [the complaint shall] state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u–4(b)(1) & (2).

Historically, the Tenth Circuit has strictly enforced Rule 9(b)'s requirement that the alleged false or misleading statements be pleaded with sufficient particularity. *See, e.g., Farlow,* 956 F.2d at 986. Consequently, the PSLRA is unlikely to significantly alter Tenth Circuit jurisprudence with respect to pleading facts constituting the alleged fraud. *See Queen Uno Ltd. Partnership v. Coeur D'Alene Mines Corp.,* 2 F.Supp.2d 1345, 1353 (D.Colo.1998) ("Section 78u–4(b)(1) did not—at least with respect to this Circuit—alter drastically, if at all, the standards for pleading false and misleading statements"). Accordingly, the court may consult Tenth Circuit caselaw decided prior to the PSLRA for guidance with respect to pleading alleged misrepresentations. *Id.*

■ When pleading a securities action under § 10(b), the plaintiff must allege *"what* misrepresentations were made by the defendant, *to whom* these misrepresentations were made, *when* these misrepresentations were made, [and] *how* these misrepresentations furthered the alleged fraudulent scheme." *Farlow v. Peat, Marwick, Mitchell & Co.,* 956 F.2d 982, 986 (10th Cir.1992). In other words, the plaintiff must plead the "who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990).

■ With respect to the alleged facts constituting the fraud, plaintiff's complaint wholly fails to satisfy the pleading requirements imposed by Rule 9(b) and the PSLRA. Plaintiff fails to identify the exact time, place, content, and speaker of each of the alleged misrepresentations. Instead, throughout his complaint, plaintiff makes vague references to "verbal and written communications," allegedly promising that certain "upcoming promised contracts" were "done" deals, that Power Phone, Inc. enjoyed "legitimate sound financials," and that a "reverse merger" between Power Phone, Inc. and T.M.C. Agroworld would yield "substantial profits." [2]

**2.** The court notes that Plaintiff has attached to his complaint what appear to be copies of transmitted e-mails, press releases, and various other communications. The court finds these exhibits insufficient to save plaintiff's complaint from dismissal, however. Most of the papers attached to the complaint are inadequately labeled with respect to date, speaker, place, etc. Further, plaintiff fails to state how or why any of these alleged misstatements are false.

Further, plaintiff fails to identify the exact date and place of each of the alleged misstatements; plaintiff's statement that the misrepresentations were communicated "over a period of time including but not limited to mid-year 1996 to date" appears to be plaintiff's only attempt to temporally fix each of the alleged misrepresentations. Plaintiff's complaint also fails to identify to which defendant each misrepresentation is attributed; instead, most instances of misrepresentations are collectively imputed to defendants Carrion, Jay Vermonty, Gershon Tannenbaum, and Noah Steinberg.[3] Furthermore, defendants Carmen Vermonty and Cruz are not associated with the making of any statement, false or otherwise.

More importantly, plaintiff has failed to provide any specific facts to indicate how or why the alleged misrepresentations were false. Indeed, most of the alleged misstatements involve defendants' predictions concerning potentially profitable business propositions that appear to be examples of "corporate optimism" which may not be actionable in the first place. *See, e.g., Grossman,* 120 F.3d at 1119 ("Statements classified as 'corporate optimism' or 'mere puffing' are typically forward-looking statements, or are generalized statements of optimism that are not capable of objective verification. Vague, optimistic statements are not actionable because reasonable investors do not rely on them in making investment decisions.")[4] In any case, "mere conclusory allegations of falsity are insufficient." *Id.* at 1124. Indeed, "[w]here fraudulent projections are alleged,

the plaintiffs must identify in the complaint with specificity some reason why the discrepancy between a company's optimistic projects and its subsequently disappointing results is attributable to fraud." *Id.* quoting *Hillson Partners Ltd. v. Adage, Inc.,* 42 F.3d 204, 209 (4th Cir.1994).

Additionally, plaintiff's complaint utterly fails to allege with particularity defendants' intent to deceive, or "scienter." Although Rule 9(b) allows "state of mind" to be pled generally, courts have long imposed stringent requirements with respect to pleading defendant's intent to defraud in securities actions. *See, e.g., Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); *O'Connor v. R.F. Lafferty & Co.,* 965 F.2d 893, 899 (10th Cir.1992).

The PSLRA requires plaintiff to plead specific "facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). Prior to the PSLRA's enactment, the Second Circuit imposed the most stringent pleading requirements with respect to defendant's state of mind. *See* Sen. Rep. No. 104–98, at 15 (1995) *reprinted in* 1998 U.S .C.C.A.N. 679, 694. According to the Second Circuit, defendant's intent to deceive is adequately pleaded when the complaint alleges (1) facts indicating defendant's motive or opportunity to defraud; or (2) facts constituting strong circumstantial evidence of conscious misbehavior or recklessness. *See In re Time Warner Inc. Securities Litigation,* 9 F.3d 259, 268–69 (2d Cir.1993). Currently, a debate exists with respect to the quantum of intent

---

**3.** Indeed, the allegation that "Jay Vermonty advised plaintiff...in 1996...that a reverse-merger was in the works with T.M.C. Agroworld, Inc. that would substantially increase the price of the stock upon final consummation of the transaction and that substantial profits were forthcoming.... The oral representations made by Jay Vermonty to retain or purchase more stock and the written and oral representations made by Dr. Carrion about done 'deals' that would increase stock prices and provide substantial profits and written and oral representations made by Noah Steinberg to the shareholders about legitimate sound financials and oral representations made by Gershon Tannenbaum concerning the financial soundness of the various companies involved, communicated before during and after this merger...." represents the most precise attempt to individually identify each speaker.

**4.** Because plaintiff has failed to offer any facts to establish the falsity of the perceived misstatements, the court cannot begin to evaluate whether the statements fall within the "safe harbor" provisions of the PSLRA. 15 U.S.C. § 77z–2 and 15 U.S.C. § 78u–5. These provisions typically exclude "forward-looking statements" from liability where: (1) the forward-looking statement is accompanied by "meaningful cautionary statements identifying important factors that could cause actual results to differ materially," (2) the forward-statement is deemed "immaterial," or (3) the forward-looking statement was made without "actual knowledge" of its falsity. *Id.* The court cautions plaintiff to carefully consider whether any of the alleged misrepresentations are in fact actionable before filing his amended complaint.

required to satisfy the PSLRA's scienter pleading requirement. *See Queen Uno,* 2 F.Supp.2d at 1355–1359. The controversy focuses on whether Congress intended to adopt the Second Circuit's scienter test in its entirety, or instead to impose an even stricter pleading requirement. *See id.*

Plaintiff's failure to advance anything more than bald assertions of defendants' fraudulent intent makes it unnecessary, at this juncture, to evaluate the PSLRA's legislative history to formulate an opinion as to Congressional intent with respect to the scienter pleading standard. Indeed, the only indications of scienter plaintiff offers include conclusory allegations that the allegedly false statements were "known to be false (or untrue) when made by defendants and/or were recklessly made without adequate knowledge of their validity." For purposes of the instant motion to dismiss, the ultimate interpretation of PSLRA's scienter pleading standard is nondispositive; whatever the outcome of that debate, what is clear is that mere speculation and conclusory allegations of fraudulent intent hardly suffice.

Accordingly, due to plaintiff's failure to fulfill the pleading requirements necessary to state a claim under the Securities Exchange Act of 1934, Counts II, IV, and V are dismissed with leave to amend, as set forth below.[5]

### B. Counts I and III: Securities Exchange Act of 1933

■ Count I of plaintiff's complaint alleges only that defendants' conduct "is precluded by the Securities Act of 1933 15 U.S.C. § 77 et seq." Plaintiff fails to specify under which subsection of that Act liability is alleged. As noted by defendants, although it is impossible to ascertain which section of the 1933 Act is allegedly violated, plaintiff has failed to

allege material elements of any of the possible causes of action prescribed by the 1933 Act.

First, the court is skeptical as to whether plaintiff understands the type of conduct prohibited by the pertinent sections of the Securities Exchange Act of 1933. In a nutshell, "[s]ection 11 provides for liability on account of false registration statements; § 12(2) for liability based on misstatements in prospectuses." *Gustafson v. Alloyd Co., Inc.,* 513 U.S. 561, 571, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995).

If plaintiff endeavors to allege a claim pursuant to § 11, he must first plead the requisite elements that defendant distributed a false or misleading registration statement and that plaintiff purchased Power Phone stock in reliance on the false registration statement. *See Barnes v. Osofsky,* 373 F.2d 269, 272–273 (2d Cir.1967) ("Section 11 deals with civil liability for untrue or misleading statements or omissions in the registration statement. ... [and] may be maintained only by one who comes within a narrow class of persons, i.e. those who purchase securities that are the direct subject of the prospectus and registration statement.")

If instead Count I alleges liability under § 12(1), 15 U.S.C. § 77l(1), plaintiff has failed to allege that the sale of securities was made in violation of the registration requirements. Finally, if Count I alleges liability under § 12(2), 15 U.S.C. 77l(2), because " § 12(2) contains language, i.e., 'by means of a prospectus or oral communication,' that limits § 12(2) to public offerings," *Gustafson,* 513 U.S. at 577, 115 S.Ct. 1061, the complaint is insufficient because it fails to allege that stock was purchased in an initial public offering.

---

5. The court notes that it has considered Count II as alleging a violation under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. 78j(b). It is unclear from the complaint, however, that a § 10(b) claim is actually alleged in Count II because it claims only that defendants' actions are "precluded by the Securities Exchange Act of 1934 15 U.S.C. § 78a et seq." The court admonishes plaintiff to amend his complaint to specify the particular subsection of the Securities Exchange Act of 1934 under which liability is alleged; a mere reference to the entire Act is unacceptable. If plaintiff is in fact alleging

§ 10(b) liability in Count II, plaintiff is advised to incorporate Counts II and V, as Rule 10b–5 is merely the SEC rule promulgated to implement its § 10(b) statutory counterpart.

Furthermore, a finding of "controlling person" liability pursuant to 15 U.S.C. § 78t is predicated upon a finding of liability under the Securities Exchange Act of 1934; consequently, an allegation thereunder necessarily requires accurate pleading of liability under the Securi ✔ Exchange Act of 1934. Accordingly, Count IV is also dismissed with leave to amend.

Furthermore, although claims alleging mere negligence may be maintained under the 1933 Act, "when § 11 and § 12 claims are grounded in allegations of fraud, as they plainly are in this case, the allegations must meet the requirements of Rule 9(b)." *GlenFed, Inc. Securities Litigation*, 11 F.3d 843, 850 (9th Cir.1993), *vacated and remanded on other grounds, GlenFed Securities Litigation*, 42 F.3d 1541 (9th Cir.1994). Where, as here, the 1933 Act claims are merely "wholesale" adoptions of plaintiff's § 10(b) securities fraud claims, plaintiff must satisfy Rule 9(b)'s heightened pleading standard. *Melder v. Morris*, 27 F.3d 1097, 1100 n. 6 (5th Cir. 1994). Accordingly, not only does the complaint fail to specify under which subsection of the 1933 Act liability allegedly lies, plaintiff's 1933 Act claim(s) also fails to comply with the pleading requirements of Rule 9(b).[6] Defendants' motion to dismiss Counts I and III is therefore granted with leave to amend as set forth below.

## C. Counts VI, XI, XII, XIII, XIV, XV: Kansas Securities Act and Common Law Fraud Claims [7]

 In Count VI, plaintiff alleges that defendants' conduct is "precluded by the Kansas Securities Act K.S.A. § 17–1252 et seq." Plaintiff has, once again, failed to identify under which subsection of an immense statute liability is alleged. Count VI consists only of the identical, "cut-and-paste" language that comprises many of the counts contained in plaintiff's complaint. Presumably, plaintiff's Kansas Securities Act claim is also based in fraud, and is thus subject to the same pleading standards as his federal securities claims. Accordingly, Count VI is also dismissed with leave to amend for failure to satisfy Rule 9(b)'s pleading requirements.

Counts XI, XII, XIII, XIV, and XV, captioned "fraud," "fraud by silence," "fraud-promise of future events," "fraudulent omission," and "fraudulent misrepresentations,"

respectively, also fail to satisfy Rule 9(b)'s directive that facts allegedly constituting fraud must be pleaded with particularity. Although state law will determine whether plaintiff's claims for common law fraud are viable, the complaint must nevertheless comply with Rule 9(b). *See generally Seattle–First Nat'l Bank v. Carlstedt*, 800 F.2d 1008, 1010 (10th Cir.1986) ("in this circuit, the particularity requirement of Rule 9(b) is applicable generally in securities fraud cases"). Accordingly, defendants' motion to dismiss Counts VI, XI, XII, XIII, XIV, and VI is granted with leave to amend as detailed below.

## D. Count VII: Unjust Enrichment

Count VII of plaintiff's complaint alleges that by their "assist[ance] in the perpetration of fraud," the defendants have been unjustly enriched. The court assumes that plaintiff alleges unjust enrichment in the amount of $75,000, but is unable to ascertain whether that conclusion is correct because plaintiff has failed to state otherwise in his claim for unjust enrichment.

 "The basic elements of a claim based on a theory of unjust enrichment are: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." *Logan v. Logan*, 23 Kan.App.2d 920, 930, 937 P.2d 967, 976 (1997). Mindful of the standard governing a 12(b)(6) motion to dismiss, the court concludes that while inartfully pleaded, plaintiff may be able to prove a set of facts establishing each of the material elements necessary to an unjust enrichment claim. Accordingly, defendants' motion to dismiss Count VII is denied.

---

**6.** As with Count IV, Count III's allegation of "controlling person" liability under the Securities Exchange Act of 1933, 15 U.S.C. § 77o, is likewise dismissed due to plaintiff's failure to adequately plead a claim under the 1933 Act.

**7.** The court notes that with respect to each of the fraud counts, Counts I, II, III, IV, V, VI, XI, XII, XIII, XIV, and XV, defendants have raised plaintiff's failure to allege loss causation as an alterna-

tive ground for dismissal. In light of the fundamental shortcomings of plaintiff's complaint, the court does not reach the issue of whether plaintiff has sufficiently pleaded loss causation. The court cautions plaintiff to consider the legitimacy of defendants' argument when drafting the amended complaint, however. Indeed, the court will not hesitate to dismiss the amended complaint on this basis if the argument is again raised and found to be valid.

## E. Counts VIII, IX, and X: Common Law Negligence

Counts VIII, IX, and X, are labeled "negligence," "negligent omission," and "negligent misrepresentation," respectively. The court notes that each of these claims consists of the same verbiage: [defendants] "did certain acts which a reasonably prudent person would not do, and/or the defendants' failed to do something which a reasonably prudent person would do, when prompted by consideration which ordinarily regulates the conduct of human affairs. Defendants' failed to use ordinary care under the circumstances."

■ A plaintiff asserting a claim sounding in negligence must establish: (1) a duty of reasonable care owed by the defendant to the plaintiff; (2) a breach of that duty; (3) damage to the plaintiff; and (4) a causal connection between the duty breached and the damage sustained. *Hammig v. Ford*, 246 Kan. 70, 73, 785 P.2d 977 (1990). Besides being baffled as to why identical language has been used to state three different causes of action, the court finds Counts VIII, IX, and X insufficiently pleaded. Although actions for negligence need only satisfy the general notice pleading requirements of Rule 8, the court believes that these counts fail to adequately plead negligence on the part of defendants. Indeed, a sheer assertion that a defendant has "failed to do something which a reasonably prudent person would do" is insufficient; defendants cannot be expected to recognize what exactly the "something" is that they failed to do. Because the court is granting plaintiff leave to amend his complaint, the court finds it reasonable to require plaintiff to amend each of the negligence counts so as to provide defendants with notice of their alleged negligent acts.[8] Accordingly, defendants' motion to dismiss Counts VIII, IX, and X is granted with leave to amend as set forth below.

## F. Count XVI: Breach of Fiduciary Duty

Count XVI of the complaint alleges that "Plaintiff placed a special trust and confidence in Jay Vermonty, Gershon Tannenbaum, Noah Steinberg and Dr. Carrion to offer legitimate information...." A plaintiff pleading a claim for breach of fiduciary duty need only comply with Rule 8 (notice pleading), not Rule 9(b), because this claim is not based on fraud. *See* Fed.R.Civ.P. 9(b).

■ Under Kansas law, "[a] fiduciary relation... exist[s] in cases where there has been a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence." *Denison State Bank v. Madeira*, 230 Kan. 684, 692, 640 P.2d 1235, 1241 (1982). Whether such a duty arises depends on the facts and circumstances of each case. *Id.* (quotation omitted). Kansas courts have "refused, for that reason, to give an exact definition to fiduciary relations." *Id.*

■ Kansas law regarding fiduciary duties may be summarized as follows:

It may be said that generally there are two types of fiduciary relationships: (1) those specifically created by contract such as principal and agent, attorney and client, and trustee cestui que trust, for example, and those created by formal legal proceedings such as guardian and/or conservator and ward, and executor and administrator of an estate, among others, and (2) those implied in law due to the factual situation surrounding the involved transactions and the relationship of the parties to each other and to the questioned transactions.

*Rajala v. Allied Corp.*, 919 F.2d 610, 613 (10th Cir.1990) (quoting *Denison State Bank*, 230 Kan. at 691, 640 P.2d at 1241). The Tenth Circuit has recognized that "conscious as-

---

8. The court notes that Kansas does, in fact, recognize a cause of action for negligent misrepresentation as defined in the Restatement (Second) of Torts § 552. *Mahler v. Keenan Real Estate, Inc.*, 255 Kan. 593, 604, 876 P.2d 609, 616 (1994). The elements of negligent misrepresentation are similar to those of a claim for fraud, except that a negligent misrepresentation claim does not require proof that the defendant knew the statement was untrue or was reckless as to whether the statement was true or false. *See id.*

Having considered the issue once before, the court discerns from *Mahler* no indication that Kansas recognizes a claim based solely on "negligent omissions," however. *See Ames v. Uranus*, 1994 WL 482626, *15 (Aug. 24, 1994). Because each of plaintiff's negligence counts merely echo one another, plaintiff is advised, when amending his complaint, to consider whether each of the negligence counts may be consolidated into one concisely-pleaded count of negligent misrepresentation.

sumption of the alleged fiduciary duty is a mandatory element under Kansas law." *Rajala*, 919 F.2d at 615.

Although a party alleging breach of fiduciary duty need only satisfy the general pleading standard of Rule 8(a), the court finds that plaintiff has failed to allege any facts from which the court can infer the existence of a fiduciary duty, or a breach thereof. Accordingly, Count XVI is dismissed with leave to amend as set forth below.

### G. Count XVII: Breach of Implied Warranty of the Validity of the Transaction

■ Count XVII asserts a claim for "breach of implied warranty of the validity of the transaction." The court is unaware of any such cause of action, and has been unable to discover any Kansas cases recognizing the actionability of such a claim. Furthermore, should such a warranty exist, the court is unable to determine to which transaction plaintiff's claim of invalidity refers (the validity of the sale of stock to plaintiff or the validity of the purportedly "done" deals?).

The court suspects that by this claim, plaintiff is merely attempting to recast his securities fraud claim(s) under a breach of contract theory. Because plaintiff has failed to plead any facts with respect to the existence of a contract, much less any facts to support an inference that any such contract was breached, the court urges plaintiff to consider the propriety of asserting this claim without first confirming the existence of facts to support this allegation. Accordingly, defendants' motion to dismiss Count XVII is granted with leave to amend as detailed below.

### H. Count XVIII: Common Law Conspiracy

■ In *May v. Santa Fe Trail Transp. Co.*, 189 Kan. 419, 370 P.2d 390 (1962), the Kansas Supreme Court noted that in order to state a claim under a civil conspiracy theory, the plaintiff is required to plead facts which establish the requisite elements. *Id.* at 424, 370 P.2d 390. Under Kansas law, the elements of a common law civil conspiracy claim are: (1) two or more persons; (2) an object

to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof. *Vetter v. Morgan*, 22 Kan.App.2d 1, 8, 913 P.2d 1200 (1995) (citing *State ex rel. Mays v. Ridenhour*, 248 Kan. 919, 927, 811 P.2d 1220, 1226 (1991)). A civil conspiracy claim is not actionable without commission of some wrong giving rise to a cause of action independent of the conspiracy. *See Mays*, 248 Kan. at 927, 811 P.2d at 1226.

■ Plaintiff has failed to adequately state a claim for civil conspiracy under state law. Plaintiff's allegation of defendants' purported participation in an unlawful conspiracy largely parrots the previous allegations of defendants' alleged dissemination of untrue statements. The court therefore presumes that the "wrong independent of the alleged conspiracy" upon which plaintiff's conspiracy claim is based is defendants' alleged fraudulent activity. Because plaintiff has failed to adequately plead fraud, or any other wrong independent of the conspiracy claim, plaintiff's conspiracy claim is likewise insufficiently pleaded.[9] Accordingly, defendants' motion to dismiss Count XVIII is granted with leave to amend as detailed below.

### IV. Motion to Dismiss Claims for Improper Venue

Defendants argue that, according to the federal securities laws, this court is an improper venue with respect to defendants Carmen Vermonty and Hector Cruz. Both the 1933 and 1934 Acts provide for venue in any district in which a defendant "is found or is an inhabitant or transacts business." 15 U.S.C. §§ 77v(a) & 78aa. Additionally, the 1933 Act provides a supplemental venue option where "the offer or sale took place" 15 U.S.C. § 77v(a), and the 1934 Act provides an extra venue option where "any act or transaction constituting the violation occurred." 15 U.S.C. § 78aa. Defendants argue that while the complaint alleges that the defendants made numerous representations in Kansas by phone, e-mail, and facsimile,

---

9. In addition, plaintiff's conspiracy claim is also defective in that nowhere in plaintiff's complaint is the defendants' "meeting of the minds" to

defraud plaintiff, or facts supporting an inference thereof, alleged.

there is no allegation that Cruz or Carmen Vermonty "had any contact whatsoever with plaintiff. Cruz has never had any contact with plaintiff and has never conducted any business in Kansas.... Moreover, the complaint does not allege that either Carmen Vermonty or Cruz participated in a common scheme to violate the securities laws with the other Defendants...."

The court finds defendants' argument with respect to improper venue unpersuasive. The court notes that defendants Cruz and Carmen Vermonty are not included in plaintiff's federal securities claims, and therefore an objection to venue based upon those Acts is inappropriate. Instead, it appears that only Counts VII, VIII, IX, and X (unjust enrichment and negligence claims), Count XII (fraud by silence claim), Counts XIV and XV (fraudulent omission and misrepresentation claims), and XVIII (conspiracy claim) allege claims against Cruz and Carmen Vermonty.

The court agrees with defendants that with respect to each of the common law fraud counts, the complaint fails to adequately allege Carmen Vermonty's and Cruz's involvement in the overall scheme to defraud plaintiff, however. The court has ordered plaintiff to amend his complaint to reflect these defendants' alleged involvement in the fraudulent scheme. If plaintiff fails to do so, the claims against these defendants may be dismissed on 12(b)(6) grounds, rather than for improper venue. Accordingly, defendants' motion to dismiss the claims against Carmen Vermonty and Hector Cruz for improper venue is denied without prejudice to reasserting it against plaintiff's amended complaint.

## V. Venue Transfer

As an alternative to its motions to dismiss for failure to state a claim or for improper venue, defendants move to transfer this case to the Eastern District of New York. Motions to transfer venue are governed by 28 U.S.C. § 1404(a), which provides in pertinent part: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Section 1404(a) affords the district court broad discretion to adjudicate motions to transfer based upon a case-by-case review of convenience and fairness. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir.1991). "The party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient." *Id.* at 1515. "[U]nless the balance is strong in favor of the movant the plaintiff's choice of forum should rarely be disturbed." *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir.1992) (quoting *William A. Smith Contracting Co. v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir. 1972)). The court must consider the following factors in determining whether to transfer a case:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp.*, 928 F.2d at 1516.

Defendants have not adequately established that the present forum is inconvenient and that transfer is warranted here. Defendants suggest that it is in the "interest of justice" to transfer the case to the Eastern District of New York. To support this contention, defendants merely assert that all of the defendants, witnesses, and virtually all of the proof related to plaintiff's claims is located in New York. Further, defendants claim that because plaintiff once traveled to New York to meet with one of the defendants, plaintiff has the resources and ability to enforce his rights there.

The court is unpersuaded by defendants' conclusory claim that a transfer of venue is warranted in this action. There has been no

showing that litigation in Kansas will impose a disproportionate burden on defendants. The court notes that in this modern age of technology, where many court appearances may take place over the telephone (as is the practice of this judge), the burden of litigation imposed upon nonresidents is greatly decreased.

Defendants have failed to establish that the inconvenience of a trial in Kansas outweighs the inconvenience that would be visited on plaintiff if the case were transferred to New York. Consequently, because a venue transfer would succeed only in shifting the inconvenience to plaintiff, the court will not disturb plaintiff's legitimate choice of forum, which is entitled to great weight. *See Heating & Cooling Master Marketers Network, Inc. v. Contractor Success Group, Inc.,* 935 F.Supp. 1167, 1172 (D.Kan.1996); *Pehr v. Sunbeam Plastics Corp.,* 874 F.Supp. 317, 321 (D.Kan.1995). Accordingly, defendants' motion to transfer venue is denied.

## VI. Leave to Amend

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The decision to grant leave to amend a complaint lies within the sound discretion of the trial court. *Viernow v. Euripides Devel. Ass'n,* 157 F.3d 785, 799 (10th Cir.1998). The court finds it possible that plaintiff could plead facts that might cure the deficiencies in the complaint. Therefore, as a discretionary measure, the court grants plaintiff leave to amend his complaint to conform with the pleading requirements imposed by rules 8(a) and 9(b) of the Federal Rules of Civil Procedure.

IT IS THEREFORE ORDERED BY THE COURT that defendants' motion to dismiss (doc. 8) is granted in part and denied in part.

IT IS FURTHER ORDERED BY THE COURT that defendants' motion to dismiss Count VII is denied.

IT IS FURTHER ORDERED BY THE COURT that defendants' motion to dismiss for improper venue or for venue transfer is denied.

IT IS FURTHER ORDERED BY THE COURT that defendants' motion to dismiss Counts I, II, III, IV, V, VI, VIII, IX, X, XI, XII, XIII, XIV, XV, XVII, and XVIII is granted.

IT IS FURTHER ORDERED BY THE COURT that plaintiff is granted leave to amend his complaint in accordance with this order on or before December 18, 1998. Failure to do so will result in dismissal with prejudice.